```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

JAHMAEL REINA,

                    Plaintiff,              MEMORANDUM & ORDER
                                              19-CV-5307(EK)
        -against-

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

        Plaintiff Jahmael Reina challenges the Commissioner of Social Security's denial of his claims for disability insurance benefits. Before the Court are the parties' cross-motions for judgment on the pleadings. For the following reasons, I grant the Commissioner's motion and deny Reina's cross-motion.

## I. Background

**A. Procedural Background**

        In May 2016, Reina applied for disability benefits, alleging a disability onset date of January 6, 2016. Administrative Tr. ("Tr.") 19, ECF No. 18.[1] The agency denied his claim. Tr. 19. In August 2018, an administrative law judge ("ALJ") held a hearing on Reina's claim. Tr 19. The ALJ concluded that Reina was not disabled and therefore not entitled

---

[1] Page numbers in citations to record documents refer to ECF pagination rather than the documents' native page numbers.

to disability insurance benefits. Tr. 28. The Appeals Council denied Reina's request for review of the ALJ's decision, rendering it final. Tr. 5. Reina timely sought review of that decision in this Court.

**B.  The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims. 20 C.F.R. § 404.1520(a)(4).

First, the ALJ determines whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(b). If not, then at step two, the ALJ evaluates whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that "significantly limits" the claimant's physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the ALJ identifies a severe impairment, then at step three, she must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations (the "Listed Impairments"). *Id.* § 404.1520(d);

20 C.F.R. pt. 404, subpt. P, app. 1. If it does, the ALJ will deem the applicant disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

Here, although the ALJ found that Reina had engaged in substantial gainful activity for portions of 2017 and 2018, the ALJ presumed that Reina had not engaged in substantial gainful activity for the duration of 2016. Tr. 22; *see* 20 C.F.R. § 404.1505(a). The ALJ also determined that Reina suffered from the "severe impairments" of congestive heart failure, right-ear hearing loss, and obesity. Tr. 22. However, the ALJ determined that Reina's other asserted impairments, such as a sprained ankle, hernias, and gingivitis, were not severe, given that those conditions "have caused only transient and mild symptoms and limitations, are well controlled with treatment or are otherwise not adequately supported by the medical evidence in the record." Tr. 22. The ALJ also determined that none of Reina's severe impairments rose to the level of a "Listed Impairment." Tr. 22.

The ALJ then must determine a claimant's residual functional capacity ("RFC"), which is the most a claimant can do in a work setting notwithstanding his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ concluded here that Plaintiff had the RFC to perform "sedentary work" with limitations. Tr. 23. Those limitations included that the work must include no "strict production quotas" or "deadlines" and must allow for Reina to be

3

"off task" for up to ten percent of the workday in addition to breaks.  Tr. 23.

At step four, the ALJ considered whether, in light of the RFC determination, the claimant could perform "past relevant work."  20 C.F.R. § 404.1520(f).  Here, the ALJ found that Reina could not perform his past work as a medical assistant.  Tr. 26-27.  At step five, the ALJ evaluates whether the claimant could perform jobs existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(g).  The ALJ determined that Reina could perform such jobs, including as a surveillance systems monitor and an order clerk.  Tr. 27-28.  Given that conclusion, the ALJ held that Plaintiff was not disabled.  Tr. 28.

## II.  Standard of Review

A district court has jurisdiction to review the final decision of the Commissioner denying an application for Social Security disability benefits.  42 U.S.C. § 405(g).  The review is limited to two questions: whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards.  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Burgess v. Astrue*, 537 F.3d 117, 127 (2d

4

Cir. 2008) (internal quotations omitted). "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g).

### III. Discussion

Reina asserts three grounds on appeal. First, he argues that the ALJ erred in finding that Reina did not suffer from a listed impairment. Mot. for J. on the Pleadings ("Pl. Mot.") 14-16, ECF No. 13. Second, he argues that the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's own statements about the severity of his impairments. Pl. Mot. 28-33. Third, he argues that the ALJ violated the "treating physician rule" in according the opinion of Plaintiff's treating cardiologist only "limited weight." Pl. Mot. 25-28. Each of these claims is without merit.

**A.   Listed Impairment Analysis**

Reina contends that the ALJ erred in concluding, at step three, that none of his impairments equaled the severity of a Listed Impairment. In particular, Reina invokes his ankle problems, including his sprained ankle, in this context, arguing that it met Listing 1.02A (referring to a "[m]ajor dysfunction of a joint(s) (due to any cause)" combined with an "inability to ambulate effectively"). Pl. Mot. 23-25. Reina does not expressly contest the ALJ's finding that his congestive heart failure, hearing loss and obesity failed to meet or equal the

5

severity of any Listed Impairment.  *See* 20 C.F.R. § 404.1520(a)(4)(iii).

As relevant here, at the time of the ALJ's decision, Listing 1.02 defined "major dysfunction of a joint(s)" as:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).  With: A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b . . . .

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02A (effective April 2, 2018) (hereinafter the "Listing").

Reina has not shown that the ALJ erred in concluding that his ankle did not constitute the "major dysfunction" of a joint.  The claimant bears the burden of proof at step three. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).  Moreover, "the absence of an express rationale does not prevent [a court] from upholding the ALJ's determination regarding [a claimant's] claimed listed impairments, [if] portions of the ALJ's decision and the evidence before him

6

indicate that his conclusion was supported by substantial evidence." *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982) (per curiam).

Here, the ALJ "considered all relevant listings" and determined that "the record does not establish the specific criteria set out by the listings." Tr. 22. Substantial evidence supports this determination.

A claimant alleging that his medical conditions meet or equal Listing 1.02 must demonstrate that he has a "gross anatomical deformity." *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 347 (S.D.N.Y. 2020). "The regulations do not define that term . . . . Accordingly, courts have relied upon the common medical definition, which defines 'gross' as 'coarse or large' and 'visible to the naked eye without the use of magnification.'" *Id.*

But Reina does not cite any record evidence showing a visible deformity. Instead, he points to MRI results of his left ankle showing "marked diffused Achille tendinosis." Tr. 926; Pl's Reply Br. 5, ECF No. 19. That result does not, however, contradict the ALJ's conclusion. Magnetic imaging would not, of course, be necessary if the deformity was visible to the human eye; thus reliance on medical evidence such as MRIs is "an implicit admission that the impairments are not gross." *Id.*; *see also Schildwachter v. Berryhill*, No. 17-CV-7277, 2019

7

WL 1116256, at *4 (S.D.N.Y. Feb. 8, 2019), *report and recommendation adopted*, No. 17-CV-7277, 2019 WL 1115026 (Mar. 11, 2019).

Even if Reina had shown a "gross anatomical deformity," he would still have had to demonstrate that the deformity "result[ed] in [his] inability to ambulate effectively, as defined in [Listing] 1.00B2b." Listing 1.02A. Listing 100.B2b defines the "inability to ambulate effectively" as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." Listing 100.B2b. The listing provides examples of "ineffective ambulation," including "the inability to walk without the use of a walker, two crutches or two canes," as well as "the inability to walk a block at a reasonable pace on rough or uneven surfaces." *Id.* § 1.00B2c.

Substantial evidence supports the conclusion that Reina was able to ambulate effectively. Although Reina was unable to "walk on his heels and toes" during a June 2016 examination, "his gait was normal as was his stance." Tr. 24, 446. Moreover, he used "no assistive device" during that examination. Tr. 446. Reina completed a function report for the Social Security Administration that same month in which he reported that he could walk "a couple of blocks" before needing

8

to "stop and rest." Tr. 297. Similarly, in a June 2018 examination, Reina was found to be "unable to walk on heels and toes due to pain in the left ankle," with an "antalgic" gait and a "left limp." Tr. 485. However, he "appeared to be in no acute distress" and "[u]sed no assistive devices." Tr. 485. One month prior to that examination, before the ALJ, Reina testified that he could walk "a block and a half" before "hav[ing] to stop and pace myself" for being out of breath. Tr. 122.

This evidence supports the conclusion that Reina did not suffer from a "an extreme limitation of the ability to walk." *Cf.* § 1.00B2c (inability to ambulate effectively may be shown by "the inability to walk a block at a reasonable pace on rough or uneven surfaces"); *see also Dibiasio v. Astrue*, No. 08-CV-0743A, 2010 WL 3368429, at *10 (W.D.N.Y. June 10, 2010) (ability to "travel short distances without a cane" supported a finding that clamant could ambulate effectively). Moreover, the evidence that Reina used no assistive device precludes a finding that he was unable "to walk without the use of a walker, two crutches or two canes." Listing 1.00B2c; *see also Carter v. Colvin*, No. 13-CV-4631, 2016 WL 3360559, at *12 (E.D.N.Y. June 9, 2016) (claimant did not meet Listing 1.02 where he did not require a hand-held assistive device).

Finally, Reina's contention that the ALJ's step-three analysis was procedurally deficient fails as well.  The ALJ may not have specifically discussed Listing 1.02, as Reina contends; but the absence of an express rationale does not undermine an ALJ's finding where, as here, other portions of the ALJ's decision identify substantial evidence supporting the conclusion.  *See Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-13 (2d Cir. 2010) (courts may look to the ALJ's discussion at other steps to determine whether substantial evidence supports the decision).  Here, although the ALJ's step-three finding does not explicitly identify reports showing the absence of evidence of ineffective ambulation, the next section of the decision contains a detailed discussion of those reports.  *See* Tr. 23-26.  For these reasons, the ALJ's determination that Reina did not suffer from a Listing 1.02A impairment must be upheld.

**B.   Treating Physician Rule**

Reina next argues that the ALJ violated the treating physician rule by failing to justify the limited weight he accorded the opinions of two treating professionals — cardiologist Dr. Sarah Reddy and physician's assistant Billy Lui — regarding Reina's functional capacity.

Dr. Reddy diagnosed Plaintiff with congestive heart failure in July 2018.  Tr. 892-96.  Based on that diagnosis, she

10

opined that Reina was incapable of even low stress jobs due to shortness of breath; could sit for only one hour at a time and stand for thirty minutes at a time; would need unscheduled hour-long breaks multiple times a day; and could only occasionally lift objects less than ten pounds. Tr. 893–96.

Because Reina filed his claim before March 27, 2017, the "treating physician rule" applies. *See Crowell v. Comm'r of Soc. Sec. Admin.*, 705 F. App'x 34, 35 (2d Cir. 2017). Under this rule, an ALJ must give a treating physician's opinion "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess*, 537 F.3d at 128 (quoting 20 C.F.R. § 404.1527(d)(2)); *see also* SSR 96-5p, 61 Fed. Reg. 34,471, 34,474 (July 2, 1996) ("[T]he adjudicator must . . . adopt in [the overall RFC] assessment any treating source medical opinion (i.e., opinion on the nature and severity of the individual's impairment(s)) to which the adjudicator has given controlling weight").

Nevertheless, an ALJ may discount a treating physician's opinion when it is conclusory or "not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). In doing so, an ALJ must consider,

11

among other things, "the length of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess*, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527) (cleaned up). The ALJ need not undertake "a slavish recitation of each and every factor," however, where his "reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

Here, the ALJ properly discounted Dr. Reddy conclusions that Plaintiff was completely disabled, given that disability is an ultimate legal issue "reserved to the Commissioner." *Snell v. Apfel*, 177 F.3d 128, 133-34 (2d Cir. 1999) (quoting 20 C.F.R. § 404.1527). Moreover, some of Dr. Reddy's own notes do not support the conclusion that Plaintiff was incapable of even sedentary work. *See* Tr. 83 (August 2017 record noting that Plaintiff denied dizziness, shortness of breath, and chest pain, and stating that he could walk two blocks); Tr. 74 (October 2017 record noting that Plaintiff could return to full-time work as a medical assistant). And while Dr. Reddy opined that Reina could only walk half a block without rest, Tr. 894, Reina self-reported that he could walk a couple of blocks before needing to rest for five minutes. Tr. 297-98.

12

Beyond that, the ALJ more than adequately reckoned with their medical findings in light of the full record.

The ALJ acknowledged that Dr. Reddy was a "treating source," Tr. 26, but observed that her opinion was "extreme and not supported by the objective evidence." Tr. 26. The ALJ specifically considered that during the relevant period, Reina presented in no acute distress, had a largely normal gait, and had no acute respiratory or cardiovascular problems other than one brief hospitalization for a cardiac event. Tr. 23-25; *see also, e.g.*, Tr. 401-02, 415, 423-24, 446-47, 485-86, 498-99, 674. Additionally, Dr. Reddy herself noted in an October 2017 record that Reina could return to full-time work as a medical assistant. Tr. 74.

Other treatment notes reflect that Reina felt better when compliant with treatment recommendations, but that he was not always compliant with his medication regimen. *Id.* at 24–25, 401, 414-415, 864-65. A claimant's "noncompliance can constitute evidence that is inconsistent with a treating physician's medical opinion and, therefore, can be considered in determining whether to give that opinion controlling weight." *Donegan v. Colvin*, No. 15-CV-0655, 2016 WL 5678553, at *12 (E.D.N.Y. Sept. 30, 2016) (quoting *Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008)).

13

Reina also argues that the ALJ improperly discounted Liu's testimony. Liu, a physician's assistant, opined that Plaintiff had "class 3-class 4 congestive heart failure which means very limited physical activities, even mild exercise may cause fatigue, palpations or shortness of breath," and that "carry[ing] or lifting any weight are [sic] not recommended." Tr. 900–903. Liu also indicated that Reina could sit for six hours, and stand for two hours, during an eight-hour workday. Tr. 902.

The ALJ found that the limitations Liu described were "generally consistent with [Reina's] demonstrated condition." Tr. 26. However, the ALJ apparently was not able to determine Liu's precise credentials, and gave his opinion "limited weight" on that basis. Tr. 26. (stating that "[i]t is unclear who the provider is and if the provider is an acceptable medical source"). The Commissioner acknowledges that this reasoning was mistaken, but contends that it was harmless error. Def. Reply Br. 14, ECF No. 15.

The Commissioner is correct. Even if the ALJ erred in questioning whether Liu was an acceptable medical source, the RFC in the ALJ's finding is consistent with Liu's recommendations and the medical evidence in the record. The RFC limited Reina to "sedentary work" with scheduled breaks and time off-task of up to 10 percent of the workday. Tr. 23; *see* 20

14

C.F.R. § 404.1567(a) (defining "sedentary work" as work that "involves sitting," though "a certain amount of walking and standing is often necessary in carrying out job duties," and observing that a job is "sedentary if walking and standing are required occasionally and other sedentary criteria are met"). Moreover, the ALJ indicated that while Reina could lift up to ten pounds, he would preferably need only to lift "at the low end of zero to 10 pounds." Tr. 23. That finding was largely consistent with Liu's opinion and also entirely consistent with Dr. Reddy's opinion that Reina could "occasionally" lift "less than 10 lbs." Tr. 895.

Finally, the opinions and findings of non-treating sources conflicted (in varying degrees) with those of Reddy and Lui. One such source was Dr. Silvia Aguiar, a consultative internal medicine physician. Dr. Aguiar noted that Reina appeared to be in no acute distress and had a normal stance. Though Reina had an antalgic gait, walked with a limp, and was unable to walk on his heels and toes, he could ambulate without an assistive device and do a half-squat. Tr. 485. Moreover, Dr. Aguiar observed no abnormalities in Plaintiff's heart, chest, and lung function, and that he had a full range of motion throughout the entire musculoskeletal system, other than reduced flexion in the ankles. Tr. 485-86.

Reina challenges the ALJ's ascription of "significant weight" to Dr. Aguiar's opinion. Social Security regulations, however, "permit the opinions of non-examining sources to override treating sources' opinions provided they are supported by evidence in the record." *Schisler v. Sullivan*, 3 F.3d 563, 570 (2d Cir. 1993) (citing 20 C.F.R. §§ 404.1527(f) [now (e)] and 416.927(f) [now (e)]); *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) ("The report of a consultative physician may constitute . . . substantial evidence [by which to compare the treating physician's opinion]."). Here, Dr. Aguiar's opinions were consistent with, and supported by, substantial other evidence in the record. *See, e.g.*, Tr. 122, 297, 446.

**C.   Reina's Statements**

Finally, Reina argues that the ALJ improperly discredited his subjective complaints of pain. Had the ALJ adequately weighted such reports, Reina contends, the ALJ would have had to conclude that Reina was disabled. Instead, Reina claims, the ALJ defaulted to the conclusion that Reina's testimony was "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 24.

Under appropriate circumstances, the subjective experience of pain can support a finding of disability. *See Gallagher v. Schweiker*, 697 F.2d 82, 84 (2d Cir. 1983). "[W]hen

16

determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  At the same time, "disability requires more than mere inability to work without pain."  *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

The ALJ did not err.  As noted above, substantial evidence, both objective and subjective, supported the conclusion that Reina could perform sedentary work (with the expressed limitations) despite his pain.  The ALJ considered this evidence against Reina's claims of pain and supporting evidence but appropriately determined that his pain was not fully disabling.  *See Snell*, 177 F.3d at 135 (ALJ is in better position to assess claimant's credibility).

In recognition of Reina's serious but not disabling impairments, the ALJ limited his RFC to sedentary work with certain limitations.  This conclusion was predicated on a thorough balancing of Reina's abilities and limitations.  The ALJ thus committed no legal error.

## IV. Conclusion

For the reasons set forth above, the Court grants the Commissioner's motion for judgment on the pleadings and denies

17

Reina's motion. The Clerk of Court is respectfully requested to enter judgment and close this case.

        SO ORDERED.

                                            /s/ Eric Komitee
                                          ERIC KOMITEE
                                          United States District Judge

Dated:    March 22, 2022
            Brooklyn, New York